UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


UNITED STATES OF AMERICA

vs.                                    Case Nos.:  3:16cr37/MCR/EMT
                                                   3:19cv40/MCR/EMT
THOMAS M. JACKSON, JR.

_____/

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 66).   The Government filed a response (ECF No. 69), and Defendant filed a reply (ECF No. 70).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).   After a review of the record and the arguments presented, the undersigned recommends that the § 2255 motion be denied without a hearing.   *See* Rules 8(a) and (b), Rules Governing Section 2255 Proceedings.

## I.    BACKGROUND and PROCEDURAL HISTORY

Defendant Thomas M. Jackson, Jr., was charged in a single-count indictment with knowingly, unlawfully, and forcibly assaulting a federal officer engaged in the performance of his official duties in violation of 18 U.S.C. §§ 111(a)(1) and 111(b)

(ECF No. 1).    The offense involved physical contact and the use of a deadly and dangerous weapon—a motor vehicle—resulting in bodily injury to Officer William Moore, a civilian police officer with the Naval Air Station Pensacola (NAS) Police Department.

The Statement of Facts in support of Jackson's guilty plea indicates that on March 5, 2016, Officer Moore was on duty and working near the main gate of NAS when Jackson approached the gate in a vehicle (ECF No. 25).    Moore saw Jackson holding cash out of his window, as though he was trying to pay a toll, and he smelled an odor of alcohol emanating from the vehicle; he also saw an open bottle of beer in Jackson's center console.    Moore asked Jackson to turn the car off because he believed Jackson was driving under the influence.    Instead of complying, Jackson accelerated the vehicle, striking Moore and dragging him approximately fifteen feet before he fell and suffered non-life threatening injuries.    Another NAS officer heard the squealing tires and fired a single shot at Jackson's vehicle as it accelerated toward him.    The bullet ricocheted off the windshield and into a nearby, parked police van.    Jackson continued through the gate, abandoned his vehicle, and fled on foot.    NAS officers located for him approximately forty minutes later.

The undersigned conducted Jackson's rearraignment on July 28, 2016 (ECF Nos. 23–28, 57), during which Jackson was represented by appointed counsel John

Terrezza.    Relevant to the instant motion, during the Rule 11 colloquy, Jackson

acknowledged that he understood that by entering a plea of guilty, he was giving up

any possible defense he had to the charge and the ability to withdraw his plea if he

changed his mind or did not like the sentence the district court imposed (ECF No.

57 at 10).    Jackson assured the court he had read the Statement of Facts and that the

facts contained in the document were true and correct (*id.* at 11–12).    The

undersigned discussed the possible penalties Jackson faced and explained the

impossibility of predicting the sentence or even the guidelines range, in advance (*id.*

at 13–14).    Jackson also acknowledged he had read the Plea Agreement (and

Supplement thereto) and understood its terms, including the elements of the offense

the Government would have to prove if the case went to trial (*id.* at 17–20).    He

denied the existence of any other agreement with the Government or any promises

or threats that induced him to enter his plea (*id.* at 18).    The district court accepted

the undersigned's recommendation that the guilty plea be accepted (ECF Nos. 27,

28).

        As reflected in the Presentence Investigation Report (PSR), Jackson's total

offense level was 26 and his criminal history category was VI (based on 19 criminal

history points), which resulted in an advisory guidelines imprisonment range of 120

to 150 months (ECF No. 33, PSR ¶¶ 35, 54, 98).    The base offense level for a

violation of 18 U.S.C. § 111(a)(1) was 14. Jackson received the following adjustments, which resulted in an adjusted offense level of 29: a four-level increase for using a dangerous weapon (U.S.S.G. § 2A2.2(b)(2)(B)); a three-level increase because the victim sustained bodily injury (U.S.S.G. § 2A2.2(b)(3)(A)); a two-level increase because Jackson's conviction fell under the enhanced penalty provision of 18 U.S.C. § 111(b) (U.S.S.G. § 2A2.2(b)(7)); and a six-level increase because Jackson, in a manner creating a substantial risk of serious bodily injury and knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom (U.S.S.G. § 3A1.2(c)(1)) (PSR ¶¶ 25–28). A three-level downward adjustment for acceptance of responsibility brought Jackson's total offense level down to 26. The applicable advisory guidelines range—120 to 150 months of imprisonment—was below the statutory maximum of twenty years (PSR ¶¶ 97, 98).

Jackson objected to the application of the four-level enhancement for the use of a dangerous weapon. He noted the adjustment is applicable only if he had acted with the intent to cause bodily injury, and he asserted that although he had acted recklessly, there was no support for a finding that he acted with the intent to cause harm, pointing to his intoxication and other factors (PSR ¶ 118). The Government asserted that the application of the adjustment pursuant to § 2A2.2(b)(2)(B) was

proper, notwithstanding Jackson's intoxication, noting in part there were outstanding warrants for Jackson's arrest at the time and he knew as much (*id.* at 119).

Next, Jackson objected to the six-level adjustment, claiming that he did not know the victim was a law enforcement officer (PSR ¶120).    The Government countered that the victim was wearing a police uniform, which included a badge and gun (PSR ¶ 123).    The parties also disagreed whether Jackson committed the assault while fleeing from another offense, as also required by U.S.S.G. § 3A1.2(c) (PSR ¶ 124).

Finally, Jackson objected to the calculation of his criminal history, arguing that no points should have been assessed for the conviction in Paragraph 51 of the PSR because it was related to another conviction for which he received points (PSR ¶¶ 49, 51, 126).    The probation officer concurred and amended the report, although the reduction of two points did not change Jackson's criminal history category (PSR ¶ 127).

Sentencing was conducted in two parts.    At the first proceeding, held October 19, 2016, Mr. Terrezza expanded on his objection regarding Jackson's lack of intent to cause bodily injury (ECF No. 40 at 3).    Counsel stated that absent such intent, the proper base offense level should be derived from § 2A2.3, which applies to felonious assaults, rather than § 2A2.2, which governs aggravated assault and

requires intent to cause bodily injury (*id.* at 4).    Alternatively, Mr. Terrezza argued that even if the court found § 2A2.2 was the correct guideline, there was a double-counting problem with applying both the adjustment for the dangerous weapon and the adjustment for the § 111(b) conviction (*id.* at 6).    Finally, Mr. Terrezza argued that there was a double counting problem if the court held Jackson accountable for the conduct involving an "official" victim absent a showing that he had actual knowledge, rather than only reasonable cause to believe, Moore was a law enforcement officer (*id*. at 7–8).

The Government presented the testimony of Florida State Probation Officer Stephanie Bercier regarding her supervision of Jackson and to establish that Jackson knew he was subject to outstanding arrest warrants at the time of the instant offense (ECF No. 40 at 10–20).    Ms. Bercier testified that she met with Jackson on September 24, 2015, and told Jackson she was going to advise the Leon County court that Jackson had violated probation and that arrest warrants would likely issue. Once the warrants were in fact issued, in October 2015, Ms. Bercier contacted the warrants division of the sheriff's office to advise them that Jackson was in a treatment program.    Deputies were unable to enter the facility to serve warrants. Following his release from treatment, Jackson neither contacted Ms. Bercier nor met with her again.

Next, in order to establish Jackson's intent to cause bodily harm, Officer Moore testified about the sequence of the events of March 5, 2016, as the Government played a video recording (ECF No. 40 at 20–35).

After the presentation of evidence, defense counsel restated his objections as follows:

1. Jackson did not have specific intent to cause bodily injury due to his level of intoxication;
2. The four-level dangerous weapon enhancement did not apply because it also requires intent to cause bodily injury;
3. Application of adjustments for both the use of a dangerous weapon and for a conviction of § 111(b) would constitute double counting; and
4. Application of the adjustment for "official victim" was not warranted because Jackson did not know the victim was a law enforcement officer, and even if he did know, it would constitute double counting because it was not conceptually different from the § 111(b) adjustment.

(ECF No. 40 at 42–46.)

Jackson did not testify, but when he was invited to speak, he apologized for his actions, explained he had been intoxicated, and told the officer he did not mean to hurt him (ECF No. 40 at 58–59). The court continued the sentencing and instructed the parties to brief several issues, including whether Jackson acted with recklessness or intent to injure Officer Moore, whether application of any of the adjustments constituted double counting, and whether Jackson had knowledge or reasonable cause to believe Officer Moore was a law enforcement officer.

After receiving and reviewing the parties' submissions, the court entered a detailed written order in which it overruled Jackson's objections (ECF No. 41). It found that Jackson's felonious assault involved a dangerous weapon with intent to cause bodily injury, notwithstanding his claim of intoxication (*id.* at 3). The court inferred that Jackson intended to use his vehicle to cause bodily injury to the officer if doing so was necessary to ensure his successful escape (*id.* at 4). It also rejected each of Jackson's claims of double counting (*id*. at 5–9).

Sentencing reconvened on January 13, 2017 (ECF No. 54). The court imposed a sentence of 135-months imprisonment, the mid-point of the advisory guidelines range, followed by three years of supervised release (SR) (ECF Nos. 43, 44). The court prohibited Jackson from holding any employment through which he would have access to any individual's personal and/or financial information while on SR because of his prior Leon County, Florida, identity theft convictions (ECF No. 54 at 8; *see* ECF No. 33, PSR ¶¶ 50, 51).

Jackson appealed, arguing the district court incorrectly inferred that he had the intent to cause bodily injury and impermissibly engaged in double counting (ECF No. 63). The Eleventh Circuit found that the evidence presented *could have* supported an inference that Jackson acted with mere recklessness but that the district court's contrary conclusion was not clear error (*id.* at 6–7). It further found no error

in the application of the official victim enhancement.   Finally, the court was not persuaded by Jackson's challenges to the alleged double counting, and it affirmed his sentence.

Jackson timely filed his § 2255 motion, raising four separate grounds of ineffective assistance of trial counsel.   The Government opposes the motion in its entirety.   As will be discussed herein, Jackson's motion is without merit and should be denied.

## II.   DISCUSSION

### A.   General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."   *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014). A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a

complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

The law is well established that a district court need not reconsider issues raised in a section 2255 motion that have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects"). Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. United States,* 365 F.3d at 1234.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a section 2255 motion regardless of whether they

could have been brought on direct appeal.   *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012).   In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his attorney's representation fell below "an objective standard of reasonableness," and (2) a reasonable probability exists that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance."   *Demar v. United States*, 228 F. App'x 940, 950 (11th Cir. 2007) (quotation marks, brackets, and citations omitted)[1]; *see also Johnson v. Ala.*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail.").   In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir.

---

[1]  "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."   11th Cir. R. 36-2.

2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. The fact that a particular defense or argument was unsuccessful does not demonstrate counsel's ineffectiveness. *Chandler*, 218 F.3d at 1314. When reviewing the performance of experienced trial counsel, the

presumption that counsel's conduct was reasonable is even stronger because "[e]xperience is due some respect." *Id.* at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). In the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012).

Importantly, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.   *Hollis v. United States,* 958 F. 3d 1120, 1124 (11th Cir. 2020) (counsel not constitutionally ineffective for failing to raise meritless objection to use of prior drug convictions as predicate offenses under ACCA); *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008)).   This is true regardless of whether the issue is a trial or sentencing issue.   *See, e.g*., *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor or accurate statements by prosecutor about effect of potential sentence); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good

lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). Regardless of how the standard is framed, under the prevailing case law, it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To

be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.    *Lynn*, 365 F.3d at 1239.    Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

## B.    Jackson's Claims of Ineffective Assistance of Trial Counsel

### Failure to Move to Dismiss the Indictment

In Jackson's first ground for relief, he claims counsel was constitutionally ineffective because he did not move to dismiss the indictment for lack of jurisdiction. Jackson asserts that a conviction under 18 U.S.C. § 111(a) and (b) requires that the victim be a person designated in section 18 U.S.C. § 1114, and he argues that the victim in this case was a "naval officer" and thus not a designated person under § 1114 (ECF No. 66 at 4).    Second, he claims that because the "offense took place

on the Navy's property, the United States Government does not have any jurisdiction under 28 U.S.C. § 547 to prosecute" him (*id.*).

As stand-alone jurisdictional claims, Jackson's claims would be procedurally barred because they could have been raised on appeal. Couched as claims of ineffective assistance of trial counsel, they are without merit because Jackson cannot show either deficient performance or prejudice.

Federal courts have jurisdiction over cases arising under the constitution and laws of the United States. U.S. Const. art. III, § 2, cl. 1. Federal district courts have original jurisdiction, "exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. And it is the duty of the United States Attorney to prosecute all offenses against the United States. 28 U.S.C. § 547(1).

Jackson was charged with an offense against the laws of the United States, namely, 18 U.S.C. §§ 111(a)1 and 111(b). Accordingly, it was the duty of the United States Attorney for this district to prosecute his case. Jackson's claim that his offense must have been prosecuted by courts of the "Armed Forces" because it occurred on Navy property (ECF No. 66 at 4) therefore lacks merit.[2] His claim that

---

[2] Jackson is a civilian, with no prior military service (*see* PSR ¶ 92).

the victim, a NAS police officer, is not protected by 18 U.S.C. § 1114 is also meritless.    Section 1114 applies to "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services)."    18 U.S.C. § 1114.    Officer Moore clearly is an officer or employee of the United States as contemplated in this provision.

Counsel was not constitutionally ineffective for failing to seek dismissal of the indictment on the bases set forth by Jackson in Ground One, and thus Jackson is not entitled to relief on this claim.    *Hollis,* 958 F.3d at 1124; *Brownlee*, 306 F.3d at 1066.

## Failure to Move to Vacate Guilty Plea

Jackson contends counsel should have moved to vacate his plea based on a voluntary intoxication defense (ECF No. 66 at 5).    He also appears to claim that once the Government argued at sentencing that Jackson had the specific intent to assault, the Government was raising a "new theory" or a "new element" and therefore his plea was invalid (ECF No. 66 at 5–6; ECF No. 70 at 3).

Again, Jackson's arguments fail.    Counsel strenuously argued at sentencing (and on appeal) that Jackson had no specific intent to injure Officer Moore (*see* ECF No. 33, PSR ¶¶ 118, 120–21; ECF No. 31; ECF No. 40 at 4–5, 41–44; ECF No. 69, Exh. 1 at 15–18).    The fact that counsel's efforts were unsuccessful does not

provide a basis on which to withdraw the guilty plea under Fed. R. Crim. P. 11(d)(2)(B).

Moreover, it is apparent from the record of the proceedings that Jackson's guilty plea was free from coercion and that he understood the nature of the charges as well as the consequences of his plea. *See United States v. Symington*, 781 F.3d 1308, 1314 (11th Cir. 2015). Importantly, Jackson acknowledged that he would be giving up myriad rights by entering a guilty plea, including presenting any defenses he might have to the charge (ECF No. 57 at 9–10). Jackson thus waived the right to present any defense, including that of voluntary intoxication. Counsel therefore was not deficient in failing to seek withdrawal of Jackson's plea. And even if counsel had filed such a motion, the record—including that of the sentencing proceedings during which the Government asserted various arguments in support of upward adjustments—does not reveal a basis on which Jackson would have been allowed to withdraw his plea.

Because Jackson has shown neither deficient performance nor prejudice, he is not entitled to relief on this claim.

## Failure to Object to Prior Criminal History Points

Jackson asserts counsel was constitutionally ineffective because counsel did not object to the assessment of certain criminal history points, without which

Jackson contends he would have had a Criminal History Category of V, not VI (ECF No. 66 at 7, 14).

Jackson first challenges the assessment of three points for each of the convictions identified in Paragraphs 41 and 42 of the PSR. The offense conduct charged in Paragraph 41, Case Number 01-CF-4481, took place on September 30, 2001, in or about a residence on Frank Reeder Road in Pensacola, Florida. Jackson was charged with three crimes: burglary of a dwelling while armed, aggravated assault by threat with a firearm, and grand theft. He pled guilty on April 12, 2002, and was sentenced to ten years in state prison. The offense conduct in Paragraph 42, Case Number 01-CF-4860, also took place on September 30, 2001, but at a residence on Minnetonka Street in Pensacola, Florida. Jackson was charged with burglary of a dwelling and grand theft. He pled nolo contendere on May 15, 2002, and was sentenced the same day to ten years in state prison. Although the ten-year sentences were imposed on different days, the court ordered that the sentence in Case No. 01-CF-4860 be served concurrently with the sentence imposed in Case No. 01-CF-4481 (PSR ¶ 41).

Section 4A1.1(a) of the Sentencing Guidelines provides that three points are assessed for each prior sentence of imprisonment exceeding one year and one month.

U.S.S.G. § 4A1.2(a)(2) provides that if the offenses were separated by an intervening arrest, the offenses are counted separately.    As to the offenses in Paragraphs 41 and 42 of Jackson's PSR, the record neither conclusively establishes nor totally precludes a finding that there was an intervening arrest, although it seems unlikely.

Absent an intervening arrest between the two offenses, which seems a more likely scenario, the offenses "are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day."    U.S.S.G. § 4A1.2(a)(2).    Neither situation applies here.    The offenses were charged in two separate cases and assigned separate case numbers.    And although the offenses occurred on the same day, the sentences were imposed on separate dates.[3]    Counsel was not constitutionally ineffective for failing to raise this issue—something Jackson concedes in his reply (ECF No. 70 at 4).

Jackson also contends he should not have been assessed two points for the battery and trespass conviction in Paragraph 47 (ECF No. 66 at 14).    The Government did not address this contention in its response.    A reduction of two

---

[3] In contrast, no criminal history points were assessed for the burglary convictions in Paragraphs 43, 44, 45, and 46 of the PSR for which Jackson was sentenced on May 15, 2002, to ten-year terms of imprisonment, concurrent with the term imposed in Case Number 01-CF-4860.

criminal history points would not have affected Jackson's criminal history category. The court nonetheless notes that Jackson's contention is without merit.

The PSR reflects that Jackson was arrested on January 5, 2013, and charged with battery and trespass after warning.   He pled nolo contendere on April 10, 2013, and the court withheld adjudication and placed him on probation for six months.   Jackson violated his probation, and the court adjudicated him guilty and sentenced him to 395 days in county jail with credit for time served.   The PSR assessed two points pursuant to § 4A1.1(b) and § 4A1.2(k)(1).   Section 4A1.2(k)(1) provides that in the case of a revocation of probation, the original term of imprisonment (in this case none) is added to the term of imprisonment imposed upon revocation (in this case, 395 days).   This total is used to compute criminal history points under § 4A1.1.   Because Jackson's sentence came close to, but did not exceed one year and one month, only two points were assessed pursuant to § 4A1.1(b).   There was no viable basis for an objection, and counsel was not constitutionally ineffective for failing to make a meritless objection that would not have changed the outcome of the proceedings.   *Hollis*, 958 F. 3d at 1124; *Lattimore v. United States,* 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement).

<u>Failure to Object to Specific Condition of Supervised Release</u>

Jackson's final claim for relief is that counsel did not object to the specific condition of supervised release prohibiting him from holding employment through which he would have access to any individual's personal or financial information (ECF No. 66 at 8).   Although the court referenced Jackson's prior convictions for identity theft (PSR ¶¶ 50, 51), he now contends the court did not place on the record why this condition was necessary.   He claims that the condition is an undue restriction on his life and liberty, noting his past employment as a fitness consultant and personal trainer which would require him to accept and process payment through clients' credit or debit cards.

U.S.S.G. § 5D1.3(b)(1)(A) permits the court to impose, in addition to mandatory conditions of supervised release, other conditions that are "(1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant."   The district court stated the reason for the condition it imposed.   Neither of Jackson's prior offenses was remote in time; in each, the offense conduct took place in 2014, and Jackson entered nolo contendere pleas in both cases in 2015.   Furthermore, Jackson was still on probation for the two identity theft convictions at the time of the offense conduct in this case (ECF No. 33, PSR ¶¶ 50, 51, 53).   Jackson's assertion that the condition might be

inconvenient if he accepts a position as a personal trainer in the future is highly speculative.    The court also notes that Jackson appears to have gained access to the personal identifying information at least in part through his employment at a gym (PSR ¶¶ 50, 51).    A district court may impose a condition of supervised release unrelated to a defendant's offense of conviction.    *United States v. Bull*, 214 F.3d 1275 (11th Cir. 2000); *United States v. Moran*, 573 F. 3d 1132 (11th Cir. 2009). The record reflects that counsel vigorously defended his client's interests throughout the proceeding.    Jackson has not shown that the condition he now challenges was improper given his "history and characteristics" or that, had counsel objected, the outcome of the proceedings would have been different.    He is not entitled to relief.

## III.    CONCLUSION

For all of the foregoing reasons, the court finds that Jackson has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.    Nor has he shown that an evidentiary hearing is warranted.    Therefore, Jackson's motion should be denied in its entirety.

### Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must

state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.      The Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 66) be **DENIED**.

2.      A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 14th day of April 2021.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**